IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BAUSCH & LOMB INCORPORATED and BAUSCH & LOMB AMERICAS INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA, <br><br> *Defendants*. | Case No. 26-01158 |

## **COMPLAINT**

### INTRODUCTION

1. Starting in February 2025, President Trump imposed a series of tariffs under the International Emergency Economic Powers Act ("IEEPA").

2. Among those tariffs were the "fentanyl" tariffs on imports of Canadian-, Chinese-, and Mexican-origin goods; the "free speech" tariffs on Brazilian-origin goods; the secondary tariffs on Indian-origin goods; and the reciprocal tariffs that applied to imports originating from almost every country in the world.

3. The President asserted that these tariffs fell within his authority under IEEPA to "regulate . . . importation." *See* 50 U.S.C. § 1702(a)(1)(B).

4. But "the terms of IEEPA do not authorize tariffs." *Learning Res., Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026).

5. Bausch & Lomb Incorporated and Bausch & Lomb Americas Inc. (collectively, the "B+L Importers") are U.S. importers of record that have paid these IEEPA tariffs.

6. The B+L Importers seek (a) a declaration that the IEEPA tariffs and the underlying executive orders are unlawful; (b) an order directing the Defendants to refund the IEEPA tariffs the B+L Importers have paid, with interest as provided by law; and (c) permanent injunctive relief barring the Defendants from assessing or collecting the IEEPA tariffs on the B+L Importers' future imports into the United States.

## PARTIES

7. Bausch & Lomb Incorporated is a New York corporation with its principal place of business in Rochester, NY.

8. Bausch & Lomb Americas Inc. is a Delaware corporation with its principal place of business in Bridgewater, NJ.

9. U.S. Customs and Border Protection ("CBP") is the agency responsible for collecting duties and tariffs on goods imported into the United States, including the tariffs imposed under IEEPA.

10. Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. The United States of America received the IEEPA tariffs collected from the B+L Importers and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

## JURISDICTION

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1581(i).

13. The B+L Importers' action is timely filed under 28 U.S.C. § 2636(i).

14. This Court has the powers of a district court and may award all appropriate relief, including declaratory judgments, injunctive relief, reliquidation, and refund judgments. 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1).

15. As importers of record who paid the IEEPA tariffs and face ongoing injury without judicial relief, the B+L Importers have standing. *See* 28 U.S.C. § 2631(i).

## FACTS

### The Executive Orders Imposing the IEEPA Tariffs

16. On February 1, 2025, President Trump issued Executive Orders 14193, 14194, and 14195 imposing tariffs on imports of Canadian-, Chinese-, and Mexican-origin goods ("Fentanyl Tariffs"). *See* Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 1, 2025).

17. The Fentanyl Tariffs were imposed under IEEPA.

18. The Fentanyl Tariffs remained in effect until February 20, 2026.

19. CBP also continued to collect the Fentanyl Tariffs until February 24, 2026.

20. While they were in effect, the Fentanyl Tariffs on Chinese-origin goods ranged from 10% to 20% *ad valorem*.

21. The Fentanyl Tariffs on Canadian-origin goods ranged from 25% to 35% *ad valorem*.

22. The Fentanyl Tariffs on Mexican-origin goods were 25% *ad valorem*.

23. On April 2, 2025, President Trump issued Executive Order 14257 imposing tariffs on nearly all imports of foreign-origin goods into the United States ("Reciprocal Tariffs"). Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 2, 2025).

24. The Reciprocal Tariffs were also imposed under IEEPA.

25. The Reciprocal Tariffs also remained in effect until February 20, 2026.

26. And CBP continued to collect the Reciprocal Tariffs until February 24, 2026.

27. While they were in effect, the Reciprocal Tariffs ranged from 10% to 125% *ad valorem*, depending on the imported product's country of origin.

28. On July 30, 2025, President Trump issued Executive Order 14323 imposing tariffs on imports of Brazilian-origin goods to deal with a national emergency created by "the

unprecedented actions taken by the Government of Brazil [that] have violated the free expression rights of United States persons" ("Free Speech Tariffs"). Exec. Order No. 14323, 90 Fed. Reg. 37739, 37740 (July 30, 2025).

29. The Free Speech Tariffs were imposed under IEEPA.

30. The Free Speech Tariffs remained in effect until February 20, 2026.

31. CBP also continued to collect the Free Speech Tariffs until February 24, 2026.

32. The Free Speech Tariffs were 40% *ad valorem*.

33. On August 6, 2025, President Trump issued Executive Order 14329 imposing tariffs on Indian-origin goods because India imports Russian-origin oil ("India Secondary Tariffs"). Exec. Order No. 14329, 90 Fed. Reg. 38701 (Aug. 6, 2025).

34. The India Secondary Tariffs were imposed under IEEPA.

35. Effective February 7, 2026, the India Secondary Tariffs were discontinued but had been 25% *ad valorem* until that time. Exec. Order No. 14384, 91 Fed. Reg. 6501 (Feb. 6, 2026).

36. Executive Orders 14193, 14194, 14195, 14257, 14323, and 14329 (as amended) ("Challenged Executive Orders") modified the Harmonized Tariff Schedule of the United States ("HTSUS") to implement the Fentanyl, Reciprocal, Free Speech, and India Secondary Tariffs (collectively, the "IEEPA Tariffs").

### CBP's Implementation of the IEEPA Tariffs

37. CBP assesses and collects duties and tariffs based on the HTSUS.

38. CBP is responsible for confirming imported merchandise's HTSUS classification to properly assess duties and tariffs.

39. CBP has collected the IEEPA Tariffs since their effective date.

40. "Liquidation" is the final computation of duties and tariffs owed on an entry of imported merchandise.

41. By operation of law, liquidation typically occurs 314 days after the entry date.

42. CBP has the authority to extend liquidation.

43. But CBP told importers that it would not extend liquidation solely because of the pending litigation in *Learning Resources, Inc. v. Trump*.

44. This Court has equitable authority to suspend liquidation in appropriate circumstances. *See* 19 U.S.C. § 1504(a); *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1371 (Ct. Int'l Trade 2021).

45. Alternatively, "the Government [can] opt[] to stipulate that it will refund the unlawfully collected duties for" a plaintiff's entries. *In re Section 301 Cases*, 524 F. Supp. 3d at 1371.

**Reliquidation and Refunds**

46. The Defendants "have made very clear . . . that they will not object to the Court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA [tariffs] if such [tariffs] are found to be unlawful." Defs.' Opp'n to Mot. for Prelim. Inj. at 3, *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255 (Ct. Int'l Trade Nov. 11, 2025).

47. In fact, the Defendants have assured this Court "that they will not oppose either request by plaintiffs for, or the Court's authority to issue, a final and unappealable order requiring CBP to liquidate or reliquidate plaintiffs' subject entries with refunds to plaintiffs of the challenged IEEPA [tariffs] if such [tariffs] are found unlawful." *Id.* at 4.

48. This includes the Fentanyl and Reciprocal Tariffs, as well as the Free Speech and India Secondary Tariffs. Defs.' Resp. to Ct.'s Jan. 8, 2026 Letter at 2, *AGS*, No. 25-00255 (Ct. Int'l Trade Nov. 11, 2025).

49. Because the Defendants have "convinced this [C]ourt to accept that importers who paid IEEPA tariffs will be able to receive refunds after reliquidation, and . . . benefited from the [C]ourt's subsequent conclusion that importers will not experience irreparable harm as a consequence of liquidation, the Government cannot later 'assume a contrary position' to argue that refunds are not available after liquidation." *AGS*, slip op. at 5 (Ct. Int'l Trade Dec. 15, 2025) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *see Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

**Prior Litigation Challenging the IEEPA Tariffs**

50. This Court held that IEEPA does not authorize the imposition of the Fentanyl or Reciprocal Tariffs. *V.O.S. Selections*, 772 F. Supp. 3d at 1383.

51. The Federal Circuit, sitting *en banc*, affirmed this Court's holding that the Fentanyl and Reciprocal Tariffs were unlawfully imposed. *V.O.S. Selections*, 149 F.4th at 1340.

52. The Supreme Court affirmed the Federal Circuit's judgment, concluding that IEEPA does not authorize the President to impose any tariffs. *Learning Res.*, slip op. at 20-21.

**The B+L Importers' Injuries**

53. As of the date of this Complaint, the B+L Importers have paid—and continue to pay (until February 24)—the IEEPA Tariffs on their imports into the United States.

54. The entries on which the B+L Importers have paid the IEEPA Tariffs imposed by the Challenged Executive Orders have liquidated and will continue to liquidate.

## COUNT I
## Ultra Vires Executive Orders

55. The B+L Importers reincorporate Paragraphs 1-54.

56. Because "the terms of IEEPA do not authorize tariffs," *id.* at 20, the Challenged Executive Orders were void ab initio; the HTSUS modifications predicated on those executive orders were void ab initio; and the collection of the IEEPA Tariffs was unlawful and should be set aside as ultra vires.

## COUNT II
## Declaratory Relief under 28 U.S.C. § 2201.

57. The B+L Importers reincorporate Paragraphs 1-56.

58. This Court has the power to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201.

59. The B+L Importers' claims present an actual controversy about the President's authority under IEEPA and CBP's authority to implement and collect the IEEPA Tariffs.

60. The B+L Importers are importers of record and have suffered injury by being required to deposit the IEEPA Tariffs on goods imported into the United States.

61. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Executive Orders are unlawful and that CBP lacks the authority to collect the IEEPA Tariffs from the B+L Importers.

### PRAYER FOR RELIEF

The B+L Importers respectfully request that this Court:

(a)  Declare that the Challenged Executive Orders are unlawful;

(b)  Declare that CBP lacks the authority to collect the IEEPA Tariffs set out in the HTSUS from the B+L Importers;

(c) Order CBP to reliquidate any of the B+L Importers' entries where the B+L Importers have paid the IEEPA Tariffs;

(d) Permanently enjoin the Defendants from assessing the IEEPA Tariffs on the B+L Importers' future imports into the United States;

(e) Order the United States to refund to the B+L Importers the IEEPA Tariffs collected on the B+L Importers' entries of imported merchandise, with interest as provided by law;

(f) Award the B+L Importers reasonable costs incurred in bringing this action, including attorneys' fees; and

(g) Grant such further relief as the Court deems proper.

Dated: February 23, 2026

/s/ Michael J. Lowell
Michael J. Lowell
Justin Angotti
REED SMITH LLP
1301 K Street, NW
Suite 1000 – East Tower
Washington, DC 20005
(202) 414-9200
(202) 414-9299 (fax)
mlowell@reedsmith.com
jangotti@reedsmith.com

*Counsel for Plaintiffs*